IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MYA SARAY, LLC<br><br>　　　　Plaintiff<br><br>　　v.<br><br>DABES, IBRAHIM dba<br>DABES EGYPTIAN IMPORTS<br><br>　　　　Defendants | Docket No. _____<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Mya Saray, LLC for its complaint against Ibrahim Dabes avers with knowledge as to its own acts and otherwise on information and belief as follows:

THE PARTIES

1. The Plaintiff Mya Saray, LLC ("Mya Saray") is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 43671 Trade Center Pl #114, Sterling, VA 20166.

2. Defendant Ibrahim Dabes, dba Dabes Egyptian Imports, (collectively, "Dabes") is a sole proprietorship, with a mailing address of Neuburger Str. 109 Augsburg; Fed Rep Germany 86167.

JURISDICTION AND VENUE

3. This civil action arises under the Patent, Unfair Competition, and Copyright laws of the United States, as well as the laws of Virginia, including 35 U.S.C. §271, 15 U.S.C. §§1114

1

and 1125, and 17 U.S.C. §501. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(b). Venue is proper under 28 U.S.C. §§ 1391(c) and 1400(b). Ibrahim ("Defendant") is subject to personal jurisdiction in this district.

## FACTS

4.      Mya Saray is a manufacturer and distributor of tobacco products, particularly hookahs and hookah accessories, and has been in existence since 1863.

5.      Mya Saray sells tobacco products under its MYA brand ("MYA Tobacco Products"), throughout the world, and nationally under the federally registered trademarks MYA, Reg. No. 3,031,439 ("the '439 registration" or the "Mya Word Mark") and MYA (as stylized), Reg. No. 3,031,440 ("the '440 registration" or the "Mya Design Mark"), and Reg. No. 4,693,443 ("the '443 registration). The MYA Tobacco Products are associated with many common law trademarks owned by Mya Saray, including the trade dress of packaging, various depictions of the term "MYA," along with product designs of various hookahs (collectively, MYA Common Law Trademarks). These MYA Common Law Trademarks are distinctive, non-functional, extend throughout the United States and its territories, and are buttressed by lengthy use and substantial consumer recognition.

6.      Mya Saray manufactures, distributes, advertises, publicizes, sells, and offers to sell the Mya QT hookah. The product design of this hookah ("QT Hookah") is distinctive, non-functional, and serves as a trademark. The QT Base is protected by U.S. Trademark Reg. No. 3,845,276 ("the '276 registration). The brand name "QT" is protected by U.S. TM. Reg. No. 4,562,908 ("the '908 registration" or the "QT Word Mark").

7.      Mya Saray is the exclusive owner of United States Patent No. 8,001,978 ("the '978 patent") with authority to enforce that patent. Mya Saray is the exclusive owner of United

States Patent No. 7,806,123 ("the '123 patent") with authority to enforce that patent. Mya Saray is the exclusive owner of United States Patent No. 8,573,229 ("the '229 patent") with authority to enforce that patent. Mya Saray is the exclusive owner of United States Patent No. 8,464,725 ("the '725 patent") with authority to enforce that patent.   Mya Saray is the exclusive owner of United States Patent No. 9,107,456 ("the '456 patent") with authority to enforce that patent.

8. The MYA brand is one of the most counterfeited brands in the world. The QT Hookah is the world's most counterfeited hookah.

9. Dabes is a German industrialist that has been importing hookahs and hookah accessories ("Dabes Tobacco Products") from third party manufacturers, primarily in China, for resale in Europe.

10. Mya Saray first encountered Dabes on or about 2009 when Dabes requested authority to distribute Mya Saray hookahs throughout Europe along with the Dabes Tobacco Products.

11. In performing due diligence, Mya Saray uncovered that Dabes was involved in significant counterfeiting activities, including offering counterfeits of multiple Mya Saray hookahs in the Dabes Tobacco Products line. Mya Saray refused Dabes distribution rights in any territory shortly after his request for such rights.

12. Subsequent to Mya Saray's refusal of Dabes' attempted distribution rights, Dabes expanded the Dabes Hookahs to include as a subset brand of "AMY" ("AMY Tobacco Products"), a brand that Dabes applied, and applies, to Dabes Tobacco Products throughout Europe. The term "AMY" was depicted on hookahs and hookah cases, and portrayed in packaging for tobacco products, advertisement, and sales media for the Dabes Hookahs.

13. The designation "AMY" was adopted by Dabes purely as a ruse to create, and exploit, consumer confusion occurring between the MYA and AMY products. Such confusion has actually resulted.

14. Dabes has ordered counterfeits and knock-offs of MYA Tobacco Products for the knowing purpose of confusing consumers, and permitting and encouraging its distributors and retailers to confuse consumers. For example, many of Dabes' "Jinn" hookah, which is a counterfeit of the MYA QT Hookah, is frequently sold in Europe and into the United States as an AMY QT hookah or DABES QT hookah.

15. On or about July 31, 2013 Dabes filed an application in the U.S. Patent and Trademark Office for registration of a logo comprising the term "AMY DELUXE" as a logo, U.S. App. Ser. No. 86,025,122 ("the '122 application").

16. On or about July 31, 2013 Dabes filed an application in the U.S. Patent and Trademark Office for registration of a logo comprising the term "AMY GOLD TOBACCO MOLASSES" as a logo, U.S. App. Ser. No. 86,025,182 ("the '182 application").

17. Dabes exported into the United States its Dabes Tobacco Products, including AMY Tobacco Products, to two national distributors, Premium Molasses and Allabadie. Premium Molasses and Allabadie acted in unison to accept imported AMY Tobacco Products and distribute them to retail stores throughout the United States, including the Commonwealth of Virginia.

18. The Dabes Tobacco Products include multiple products that infringe Mya Saray's intellectual property, and these products were knowingly created (and ordered to be created) by Defendant for the purpose of knowingly infringing Mya Saray's intellectual property rights. The scope of infringement is vast.

19. Defendant provides AMY Tobacco Products to Internet retailers in the United States and Europe that sell and offer to sell AMY Tobacco Products into the United States and this district via website shopping carts requiring only a consumer's acquiescence and payment information to consummate a sales transaction, including: http://5starhookah.com/AMY_c200.htm; http://www.smoking-hookah.com/hookahs; http://www.texashookah.com/hookahs.html; http://www.smokyhookah.com/hookahs.html; et. al.

20. Multiple retail stores, and other establishments, in the Commonwealth of Virginia sell, offer to sell, and use, and permit the use, of Dabes Tobacco Products, including AMY Tobacco Products.

21. In late 2013, Mya Saray warned Dabes via cease-and-desist letter to avoid selling its infringing products in the United States including any AMY Tobacco Products.

22. Subsequent to both Mya Saray's warnings and Article II litigation between Mya Saray and Dabes, Dabes escalated its copying of MYA Tobacco Products brands. Dabes copied hues, tones, and other elements of Mya Saray's packaging, which constitutes protectable trade dress as Mya Saray's Common Law Trademarks, to intensify the likelihood of confusion between the AMY and MYA brands. The elements of Mya Saray's packaging constitute a creative work protectable under Title 17, and Mya Saray's Freeze Hose Product Packaging is protected by Copyright Reg. No. VA0002019287, ("the '287 Copyright").

23. Examples of Dabes packaging for the AMY Tobacco Products sold in the United States that violates Mya Saray's Common Law Trademarks are shown in Exhibit A ("AMY Accessory Packaging") and Exhibit B ("AMY Cooling Hose Packaging"). The AMY Cooling Hose Packaging is a copy of the '287 Copyright and Mya Saray's Freeze Hose Product Packaging.

24. In late 2013, Mya Saray warned Shisha Center, Inc., a California-based national distributor, to avoid selling its infringing products in the United States including any AMY Tobacco Products or face litigation. Allabadie, through Shisha Center, Inc., agreed to cease all activities related to AMY Tobacco Products in exchange for Mya Saray's promise not to pursue litigation ("Settlement Agreement").

25. Shisha Center, Inc. was a California corporation, now dissolved, controlled by Allabadie that existed while performing the acts of this Complaint.

26. Shortly subsequent to Mya Saray's warning letter to Shisha Center, Allabadie and Dabes arranged for the import of a container of AMY Tobacco Products through Allabadie's World Smoke Shop entity, which Products Allabadie then sold. Allabadie never intended to abide by the Settlement Agreement, and used World Smoke Shop as an obscured, discreet alter ego to arrange for the imports that he knew were in violation of both law and contract. With knowledge of the Settlement Agreement, Dabes offered to import to Allabadie and did import to Allabadie hookahs in violation of the Settlement Agreement.

27. Dabes manufacturers, and orders the manufacture of, a hookah bowl that is interchangeably called the AMY Silicone or Silikon hookah bowl. This hookah bowl is sold within the United States and in and to this district and the Commonwealth of Virginia. An example of such a vendor can be found at: https://hookahjunkie.com/. This hookah bowl can be ordered via an interactive shopping cart for sale and delivery into this district merely with the payment of fees.

CLAIMS FOR RELIEF

**Count I. Violation of 15 U.S.C. § 1125(a)**
*Unfair Competition and Deceptive Marketing*

28. Mya Saray incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.

29. The conduct of Defendant constitutes use in commerce of designations and dress, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact likely to confuse and deceive a substantial number of distributors in the trade, relevant consumers, and other purchasers as to the affiliation, connection, or association of Defendant with Mya Saray and others, in violation of 15 U.S.C. § 1125(a)(1)(A).

30. The conduct of Defendant constitutes use in commerce of designations and dress, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact likely to confuse and deceive a substantial number of distributors in the trade, relevant consumers, and other purchasers as to the origin, sponsorship, or approval of Defendant's goods and commercial activities as they relate to Mya Saray and others, in violation of 15 U.S.C. § 1125(a)(1)(A).

31. The conduct of Defendant constitutes use in commerce of designations and dress, false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact that in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of Defendant's goods and commercial activities in violation of 15 U.S.C. § 1125(a)(1)(B).

32. The conduct of Defendant in unfairly competing with Mya Saray is willful and deliberate and done with an intent to misrepresent the nature, characteristics, and qualities of Defendant's goods, and confuse, mislead, and deceive a substantial number of distributors in the

trade, relevant consumers, and other purchasers, and members of the public as to the origin of Defendant's goods and to cause said persons to believe that the goods have been sponsored, approved, authorized, or licensed by Mya Saray.

33. Defendant's conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

### Count II. Violation of 15 U.S.C. § 1114
*Registered Trademark Infringement of the '439 Registration*

34. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

35. The conduct of Defendant in using the MYA Word Mark, colorable imitations, and counterfeits thereof in connection with the sale, offering for sale, distribution, and advertising of tobacco products is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(a).

36. The conduct of Defendant in reproducing the MYA Word Mark and colorable imitations and counterfeits thereof and applying the reproduction to labels, signs, prints, packages, wrappers, receptacles or advertisements with the intent to be used in commerce with the sale, offer for sale, distribution, and advertising of tobacco products and such use is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

37. Defendant's conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

### Count III. Violation of 15 U.S.C. § 1114
*Registered Trademark Infringement of the '440 Registration*

38. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

39. The conduct of Defendant in using the MYA Design Mark, colorable imitations, and counterfeits thereof in connection with the sale, offering for sale, distribution, and advertising of tobacco products is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(a).

40. The conduct of Defendant in reproducing the MYA Design Mark and colorable imitations and counterfeits thereof and applying the reproduction to labels, signs, prints, packages, wrappers, receptacles or advertisements with the intent to be used in commerce with the sale, offer for sale, distribution, and advertising of tobacco products and such use is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

41. Defendant's conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

## Count IV. Violation of 15 U.S.C. § 1114
*Registered Trademark Infringement of the '276 Registration*

42. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

43. The conduct of Defendant in using the QT Hookah product design and colorable imitations and counterfeits thereof in connection with the sale, offering for sale, distribution, and advertising of tobacco products is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(a).

9

44. The conduct of Defendant in reproducing the QT hookah product design and colorable imitations and counterfeits thereof and applying the reproduction to labels, signs, prints, packages, wrappers, receptacles or advertisements with the intent to be used in commerce with the sale, offer for sale, distribution, and advertising of tobacco products and such use is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

45. Defendant's conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

### Count V. Violation of 15 U.S.C. § 1114
*Registered Trademark Infringement of the '443 Registration*

46. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

47. The conduct of Defendant in using the MYA logo of the '443 registration and colorable imitations and counterfeits thereof in connection with the sale, offering for sale, distribution, and advertising of tobacco products is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(a).

48. The conduct of Defendant in in using the MYA logo of the '443 registration and colorable imitations thereof and applying the reproduction to labels, signs, prints, packages, wrappers, receptacles or advertisements with the intent to be used in commerce with the sale, offer for sale, distribution, and advertising of tobacco products and such use is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

49. Defendant'' conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

### Count VI. Violation of 15 U.S.C. § 1114
*Registered Trademark Infringement of the '908 Registration*

50. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

51. The conduct of Defendant in, and encouraging the use of, the QT Word Mark of the '908 registration and colorable imitations and counterfeits thereof in connection with the sale, offering for sale, distribution, and advertising of tobacco products is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(a).

52. The conduct of Defendant in in using the QT Word Mark of the '908 registration and colorable imitations and counterfeits thereof and applying the reproduction to labels, signs, prints, packages, wrappers, receptacles or advertisements with the intent to be used in commerce with the sale, offer for sale, distribution, and advertising of tobacco products and such use is likely to cause confusion or mistake or to deceive in violation of 15 U.S.C. § 1114(1)(b).

53. Defendant's conduct is causing Mya Saray immediate and irreparable injury and will continue to both damage Mya Saray and deceive the public unless enjoined by this court. Mya Saray has no adequate remedy at law.

### Count VII. Patent Infringement
*Infringement of the '978 Patent*

54. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

55. The '978 patent, which was duly and lawfully granted on August 23, 2011, describes and claims a smoking apparatus.

56. Defendant has been and is infringing, inducing infringement of, and contributing to the infringement of the '978 patent by making, using, offering for sale and/or selling, in these

United States, or importing into these United States articles, including the AMY "Jinn" hookah, that reads on the '978 patent claims, all without the consent of Mya Saray.

57. The "Jinn" hookah includes the neck seal, hookah neck, down tube, and stem interior characterized by the elements of the independent claims of the '978 patent. Alternatively, the neck seal and stem interior of the "Jinn" includes a neck seal, hookah neck, down tube, and stem interior equivalent to the elements of the independent claims of the '978 patent.

58. Mya Saray has been and will continue to be damaged by the infringing activities of Defendant and will be irreparably harmed unless those infringing activities are enjoined by this Court.

59. Mya Saray provided notice to Defendant of its infringements, and all actions of this Count are conducted with knowledge of the wrongfulness thereof and Defendant intended to perpetrate the infringements described herein.

### Count VIII. Patent Infringement
*Infringement of the '229 Patent*

60. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

61. The '229 patent, which was duly and lawfully granted on Nov. 5, 2013, describes and claims a multiple port, pressure-responsive adjustable hookah.

62. Defendant has been and is infringing, inducing infringement of, and contributing to the infringement of the '229 patent by making, using, offering for sale and/or selling, in these United States, or importing into these United States articles, including *at least* the model designated by Defendants as AMY0006, as well as other hookahs, that read on the '229 patent claims, all without the consent of Mya Saray.

63. The AMY0006 hookah, includes the kit of the independent claim, including the stem, exhaust valve, and hose fitting as characterized thereby. Alternatively, the AMY0006 stem includes equivalents of the elements of the independent claims of the '978 patent.

64. Mya Saray has been and will continue to be damaged by the infringing activities of Defendant and will be irreparably harmed unless those infringing activities are enjoined by this Court.

65. Mya Saray provided notice to Defendant of its infringements, and all actions of this Count are conducted with knowledge of the wrongfulness thereof and Defendants intended to perpetrate the infringements described herein.

### Count IX. Patent Infringement
*Infringement of the '123 Patent*

66. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

67. The '123 patent, which was duly and lawfully granted on October 5, 2010, describes and claims a modular smoking apparatus.

68. Defendant has been and is infringing, inducing infringement of, and contributing to the infringement of the '123 patent by making, using, offering for sale and/or selling, in these United States, or importing into these United States articles, including *at least* the model designated as AMY630 as well as other hookahs, that read on the '123 patent claims, all without the consent of Mya Saray.

69. The AMY630 hookah includes the stem, plenum, down tube, and exhaust valve, and hookah base that that read on the independent claims of the '123 patent. The stem is subdividable as characterized by the independent claims, and the valve includes the limitations of independent claim 8.

70. Mya Saray has been and will continue to be damaged by the infringing activities of Defendant and will be irreparably harmed unless those infringing activities are enjoined by this Court.

71. Mya Saray provided notice to Defendant of its infringements, and all actions of this Count are conducted with knowledge of the wrongfulness thereof and Defendant intended to perpetrate the infringements described herein.

### Count X. Patent Infringement
*Infringement of the '456 Patent*

72. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

73. The '456 patent, which was duly and lawfully granted on August 18, 2015, describes and claims a hookah hose and hookah system.

74. Defendant has been and is infringing, inducing infringement of, and contributing to the infringement of the '456 patent by making, using, offering for sale and/or selling, in these United States, or importing into these United States articles, including *at least* the product of Exhibit M as well any hookahs used therewith, that read on the '456 patent claims, all without the consent of Mya Saray.

75. Defendant's hose includes a shank, flexible conduit, mouthpiece and reservoir, and cartridge that read on claim 1 of the '456 patent. Defendant's hose is structured and intended to be used with a hookah that infringes claim 8 of the '456 patent. Furthermore, the hose and hookah include elements that are substantial equivalents of the limitations of the independent claims of the '456 patent.

76. Mya Saray has been and will continue to be damaged by the infringing activities of Defendants and will be irreparably harmed unless those infringing activities are enjoined by this Court.

77. Mya Saray provided notice to Defendants of its infringements, and all actions of this Count are conducted with knowledge of the wrongfulness thereof and Defendants intended to perpetrate the infringements described herein.

### Count XI. Patent Infringement
*Infringement of the '725 Patent*

78. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

79. The '725 patent, which was duly and lawfully granted on June 18, 2013, describes and claims a Hookah Bowl.

80. Defendant has been and is infringing, inducing infringement of, and contributing to the infringement of the '725 patent by making, using, offering for sale and/or selling, in these United States, or importing into these United States articles, including *at least* the AMY Silicone (aka "Silikon") hookah bowl.

81. Defendant's Silicone hookah bowl, when sold with a hookah bowl screen, includes the bowl, spire, and coal plate of at least claim 1 of the '725 patent. Alternatively, the Silicone bowl includes a bowl, spire, and coal plate that are equivalents of the limitations of claim 1. The Silicone hookah bowl is commonly sold with the hookah bowl screen that transforms the Silicone hookah bowl into an infringing article.

82. Mya Saray has been and will continue to be damaged by the infringing activities of Defendants and will be irreparably harmed unless those infringing activities are enjoined by this Court.

83. Mya Saray provided notice to Defendants of its infringements, and all actions of this Count are conducted with knowledge of the wrongfulness thereof and Defendants intended to perpetrate the infringements described herein.

### Count XII. Copyright Infringement
*AMY Cooling Hose Packaging*

84. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

85. Without the authorization of Mya Saray, Defendant is, and is contributing to and aiding others in, reproducing the works of the '287 Copyright in copies; preparing derivative works of the '287 Copyright; distributing copies of the '287 Copyright to the public by sale or other transfer of ownership; performing and displaying the '287 Copyright publicly; and digitally transmitting the '287 Copyright for purposes of public performance (collectively, "Package Copyright Infringement").

86. Dabes' Package Copyright Infringement has damaged Mya Saray and has been and continues to be willful and deliberate and with full knowledge of Mya Saray's rights.

87. Defendants will continue their acts of Package Copyright Infringement unless enjoined by this Court.

88. As a result of the Package Copyright Infringement, Softech has suffered and continues to suffer damages in an amount to be proven at trial.

### Count XIII. Interference with Contract

89. Mya Saray incorporates herein by reference all preceding allegations of this Complaint as though fully set forth herein.

90. The Agreement between Allabadie and Mya Saray whereby Allabadie would cease further sales activities related to AMY Tobacco Products was duly executed by both Mya Saray and All Fun and is enforceable.

91. Mya Saray performed in accordance with the Agreement.

92. Allabadie has breached the Agreement and caused actual damages to Mya Saray that are recoverable under Virginia law.

93. Defendant knew of the contract between Defendant and Mya Saray, and by shipments of unlawful hookahs from Defendant to Allabadie resulted in a breach of the contract between Mya Saray and Allabadie, which caused damage to Mya Saray.

**WHEREFORE**, Plaintiff prays for judgment:

A. That Mya Saray is the owner of U.S. Patents of this action and has the right to sue and collect damages for any and all infringements thereof;

B That the U.S. Patents of this action remains good and valid in law and have been infringed by Defendants;

C. That Defendant, and its officers, agents, servants, and employees and those persons in active concert and participation with or controlled by any of them, be preliminarily and permanently enjoined and restrained from infringing, inducing infringement of, and contributing to the infringement of the U.S. Patents of this action;

D. That Mya Saray is the sole and exclusive owner of the Trademarks and Copyrights referenced in this Complaint, including Mya Saray's Common Law Trademarks, including the creative works associated therewith, such the '287 Copyright; and that Mya Saray

has the right to sue for its damages for any and all infringements thereof and trespasses thereupon;

  E. That Defendant has unfairly competed with Mya Saray in violation of these United States, including 15 U.S.C. §§1125 and 1114;

  F. That this Court order Defendant, its agents, associates, employees, attorneys, and any other person in active concert or participation with them, be forthwith preliminarily and permanently enjoined from: using, alone or in combination, any of Mya Saray's trademarks as registered or at the common law;

  G. That Mya Saray be awarded all damages related to the unlawful actions of Defendant as characterized by this Complaint, and/or statutory damages for counterfeiting, copyright infringement, and other actions as recoverable under the U.S. Lanham Act and/or Titles 35 and 17.

  H. That Defendant be required to account for and to disgorge its profits and that Mya Saray be awarded its damages and that those damages be trebled, together with interest and costs;

  I. That Mya Saray be awarded its reasonable attorney's fees and costs in this action;

  J. That all infringing articles and all means of making the same be delivered up and destroyed, at the costs of the Defendant;

  K. That this Court order the cancellation of any trademark rights recognized by the U.S. Patent and trademark office for any name, symbol, or device utilized by Defendant confusingly similar to any protectable trademark of Mya Saray, including Dabes' U.S. Trademark Application Serial Nos. 86/025,182 and 86/025,122.

  L. That Mya Saray be awarded such further relief as this Court may deem

just and proper.

## JURY DEMAND

Mya Saray demands a trial by jury pursuant to Fed. R. Civ. Pro. 38 as to all issues triable of right to a jury.

DATED: February 21, 2017

By *M. Keith Blankenship*
M. Keith Blankenship, Esq.
Attorney for Plaintiff
VSB# 70027
Da Vinci's Notebook, LLC
10302 Bristow Center Dr
No. 52
Bristow, VA 20136
703-581-9562
keith@dnotebook.com