CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 05 2018

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| MYA SARAY, LLC, | ) |
| Plaintiff, | ) Civil Action No. 3:17CV00016 |
| v. | ) **MEMORANDUM OPINION** |
| DABES, IBRAHIM dba DABES EGYPTIAN IMPORTS, | ) By: Hon. Glen E. Conrad<br>) Senior United States District Judge |
| Defendant. | ) |

Mya Saray, LLC ("Mya Saray") filed this action against Ibrahim Dabes, a resident of Germany, asserting federal claims under the Lanham Act, the Patent Act, and the Copyright Act, and a related claim under Virginia law. The defendant has moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Central District of California. The motion has been fully briefed and is ripe for decision.[1] For the following reasons, the defendant's motion will be denied in part and denied without prejudice in part.

## Background

Mya Saray is a limited liability company based in Sterling, Virginia that manufactures and distributes tobacco products, including hookahs and hookah accessories. Mya Saray sells the hookah products nationally under several registered trademarks, including the "MYA" mark. Compl. ¶ 5, Dkt. No. 1. The company also owns a number of hookah-related patents, as well as a federally registered copyright for certain product packaging.

---

[1] The court has determined that oral argument would not aid the decisional process at this time.

In the instant action, Mya Saray claims that Ibrahim Dabes makes, sells, offers for sale, and exports products that infringe its trademarks, patents, and copyright. Dabes is a resident of Germany. He is the majority owner of Dabes Egyptian Imports, a family business based in Augsburg, Germany that makes and sells hookah products. Mya Saray alleges that some of Dabes' products, including those branded with the name "AMY," "infringe Mya Saray's intellectual property" and "were knowingly created (and ordered to be created) by [d]efendant for the purpose of knowingly infringing Mya Saray's intellectual property rights." Compl. ¶ 18. Mya Saray further alleges that Dabes has exported the products at issue to the United States through two national distributors, who have distributed them to retail stores throughout the United States, "including the Commonwealth of Virginia." Id. ¶ 17. According to the complaint, "[m]ultiple retail stores, and other establishments, in the Commonwealth of Virginia sell, offer to sell, and use . . . Dabes Tobacco Products, including AMY Tobacco Products." Id. ¶ 20.

On December 4, 2017, Dabes moved to dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue. Dabes submitted a declaration in support of the motion. According to the declaration, Dabes has never traveled to Virginia. Nor has he ever owned, leased, or operated any property in Virginia. The declaration indicates that Dabes Egyptian Imports is not licensed to do business in Virginia, and has no employees, agents, or representatives in Virginia. Although Dabes acknowledges that AMY products are available for sale in the United States, he maintains that his business has not directly sold products in Virginia or targeted any of its products for sale in this particular state. Dabes indicates that his business "sells its products through third-party wholesalers, retail distributors, and the like." Dabes Decl. ¶ 12, Dkt. No. 29. Dabes reports that "[t]wo of these entities are located in

California" and none are located in Virginia. Id. For these reasons, Dabes argues that he lacks sufficient contacts with the Commonwealth of Virginia to allow this court to exercise personal jurisdiction over him.

In response to the pending motion, Mya Saray submitted a declaration from Mahmoud Badawi, the president of Mya Saray. The declaration indicates that Badawi was first introduced to Dabes in January of 2009, when Dabes contacted him in Virginia and inquired about distributing Mya Saray's hookahs in Europe. After receiving negative feedback from several of its European distributors regarding Dabes' business practices, Mya Saray "declined Dabes' request to distribute Mya Saray products." Badawi Decl. ¶ 12, Dkt. No. 31-1. At some point thereafter, Mya Saray received reports from its distributors regarding a new brand of AMY hookahs that were styled similar to plaintiff's MYA hookahs. Id. ¶ 13. According to Badawi, AMY hookah products are offered for sale in the Commonwealth of Virginia, and have been sold at retail stores in Falls Church, Fairfax, and Richmond. See id. ¶ 11.

## Discussion

Dabes has moved to dismiss the case for lack of personal jurisdiction and improper venue under Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure. In the alternative, Dabes has requested that the court transfer the case to the Central District of California, pursuant to 28 U.S.C. § 1404(a). The court will address each argument in turn.

### I. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal for lack of personal jurisdiction. While neither party addresses it in its briefing on the motion, the law of the United States Court of Appeals for the Federal Circuit governs the due process analysis applicable to the plaintiff's claims of patent infringement. See Autogenomics Inc. v. Oxford

3

Gene Tech. Ltd., 566 F.3d 1012, 1016 (Fed. Cir. 2009). However, for any non-patent claims that are not intimately linked to patent law, the court must review the issue of personal jurisdiction under the law of the regional circuit, in this case the Fourth Circuit. See Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003); Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1348 (Fed. Cir. 2003).

Under Federal Circuit and Fourth Circuit precedent, a federal district court may exercise personal jurisdiction over a nonresident defendant only if: (1) the forum state's long-arm statute confers jurisdiction over the defendant; and (2) the exercise of jurisdiction comports with constitutional due process requirements. See Autogenomics Inc., 566 F.3d at 1016 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-76 (1985)); see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). With regard to the first requirement, both circuits have recognized that "Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002); see also Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1411 (Fed. Cir. 2009). Consequently, the statutory and constitutional inquiries coalesce into the single question of whether due process is satisfied by the court's exercise of personal jurisdiction over the nonresident defendant. Touchcom, 574 F.3d at 1411; see also Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996) (explaining that "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one").

The due process prong of the personal jurisdiction analysis necessitates an inquiry into whether the defendant maintains sufficient "minimum contacts" with the forum state. In the "canonical" case of International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme

Court held that a court may exercise jurisdiction over a nonresident defendant only "if the defendant has 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co., 326 U.S. at 316). This requirement "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Since International Shoe was decided, courts have distinguished between "general or all-purpose jurisdiction" and "specific or case-linked jurisdiction." Goodyear, 564 U.S. at 919 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). As the Supreme Court explained in Goodyear, "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." Id. Specific jurisdiction, on the other hand, depends on an "activity or an occurrence that takes place in the forum State" and is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. In this case, there is no suggestion that the defendant's contacts with Virginia rise to the level necessary to support the exercise of general jurisdiction. Instead, the parties dispute whether the defendant's contacts with Virginia are sufficient to confer specific jurisdiction.

The Federal Circuit and the Fourth Circuit employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998);

Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., 682 F.3d 292, 301-02 (4th Cir. 2012). Under this test, the court considers: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1377 (Fed. Cir. 2015); see also Tire Eng'g & Distrib., 682 F.3d at 302. "The first two factors correspond with the 'minimum contacts' prong" of International Shoe, "and the third factor corresponds with the 'fair play and substantial justice' prong." Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

In this case, the plaintiff relies, at least in part, on the "stream of commerce" theory of specific jurisdiction. See Pl.'s Br. in Opp'n 11, 19-20, Dkt. No. 31 (emphasizing that Dabes ships his products to national distributors in the United States and that the products are ultimately sold at retail stores in Virginia). Unfortunately, "[t]he precise requirements of the stream-of-commerce theory remain unsettled." Polar Electro Oy v. Suunto Oy, 829 F.3d 1343, 1348 (Fed. Cir. 2016); see also Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1381 (Fed. Cir. 2015). As the Federal Circuit explained in Celgard:

> Whether mere placement into the stream of commerce is sufficient to establish jurisdiction, or whether intent that the products reach the forum is required, can be traced to Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102 (1987). Justice Brennan, joined by three other justices, opined that mere foreseeability that the defendant's product would wind up in the forum state was sufficient to establish jurisdiction. To Justice Brennan, due process is satisfied when the defendant places a product into the stream of commerce while being "aware that the final product is being marketed in the forum State." Id. at 117 (Brennan J., concurring in part). Due process is satisfied because the defendant directly benefits from "the retail sale of the final product in the forum State" and indirectly benefits from the "laws that regulate and facilitate commercial activity." Id. Justice

6

> O'Connor wrote separately and was joined by three justices. Justice O'Connor contended that something more than the foreseeability of entry of the defendant's products into the forum state was required because that low threshold does not guarantee that due process' purposeful-availment requirement is met. According to Justice O'Connor a "substantial connection . . . between the defendant and the forum State" must arise out of the activities of the defendant that are "purposefully directed toward the forum State." Id. at 112 (citations and quotation marks omitted). Merely placing "a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Id. (emphasis added).
>
> The Supreme Court recently reconsidered the requirements for establishing jurisdiction under a stream-of-commerce theory in McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780 (2011). Again, the Court did not reach consensus on whether something more than foreseeability is required. Writing for a plurality of the Court, Justice Kennedy held that jurisdiction over the defendant was improper under a stream-of-commerce theory because the defendant had not purposefully availed himself of the forum state's laws. Specifically, the jurisdictional facts did not "reveal an intent to invoke or benefit from the protection of" the laws of the forum state. Id. at 2791.

Celgard, 792 F.3d at 1381.

Since Asahi was decided, the Federal Circuit has "declined to take a position on the requirements of a stream-of-commerce jurisdictional test" because the resolution of the cases before it did not require the Court to do so. Celgard, 792 F.3d at 1382; see also Polar Electro Oy, 829 F.3d at 1349-50 ("In Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1566 (Fed. Cir. 1994), this court declined to decide which of Justice O'Connor's and Justice Brennan's tests should be adopted because the outcome of that appeal would be the same under either test. Subsequent panels have followed that approach, as the resolution of the cases thus far has not required us to take a side on the Asahi divide. Here, we likewise decline to decide which version of the stream-of-commerce theory should apply because, . . . the result would be the same under all articulations of the stream-of-commerce test."). In contrast, the Fourth Circuit

7

has held that merely placing products into the stream of commerce "with the expectation that they would be purchased in [the forum state]" is not sufficient to constitute "activity purposefully directed" at that state. In re Celotex Corp., 124 F.3d 619, 629 (4th Cir. 1997) (citing Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945 (4th Cir. 1994)). Accordingly, "most post-McIntyre decisions from lower courts in the Fourth Circuit have concluded . . . that the Fourth Circuit essentially follows the 'foreseeability plus' or 'stream-of-commerce plus' test, as set forth in Asahi." Collier v. Land & Sea Rest. Co., LLC, No. 7:13-cv-00104, 2014 U.S. Dist. LEXIS 147118, at *16 (W.D. Va. Oct. 15, 2014) (Conrad, J.) (collecting cases).

When presented with motions to dismiss for lack of personal jurisdiction, district courts have "considerable procedural leeway" and "may permit discovery in aid of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); see also Informaxion Solutions, Inc. v. Vantus Grp., 130 F. Supp. 3d 994, 998 (D.S.C. 2015) (emphasizing that "district courts have broad discretion to allow jurisdictional discovery") (citing Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir. 2003)); Rich v. KIS California, Inc., 121 F.R.D. 254, 259 (M.D.N.C. 1988) (observing that a court should ordinarily permit jurisdictional discovery unless the plaintiff's claim appears to be "clearly frivolous"); 25 CP, LLC v. Firstenberg Mach. Co., 1:09-cv-00080, 2009 U.S. Dist. LEXIS 115194, at *36 n.14 (D.N.H. Dec. 8, 2009) (noting that courts "have the authority to order jurisdictional discovery sua sponte"). In cases involving the unsettled stream-of-commerce theory, jurisdictional discovery has been found to be particularly appropriate. See, e.g., Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 (Fed. 2005) (concluding that a determination as to which stream-of-commerce standard should be adopted could "not be resolved on the present record because the district court declined to order jurisdictional discovery," and observing that if the plaintiff "is

8

able to satisfy Justice O'Connor's test, there will be no need to address whether the less restrictive test proposed by Justice Brennan should be the standard . . . under the due process clause"); see also Celgard, 792 F.3d at 1375 (noting that defendant's original motion was denied without prejudice to refiling following the conduct of jurisdictional discovery); Polar Electro Oy, 829 F.3d at 1346 (noting that defendant's motion was held in abeyance while the parties conducted jurisdictional discovery).

Applying these principles, the court concludes that jurisdictional discovery is warranted in the instant case, and that such discovery would aid the court in determining whether specific jurisdiction exists with respect to each claim asserted in the complaint. See Gatekeeper Inc. v. Stratech Sys., Ltd., 718 F. Supp. 2d 664, 667-68 (E.D. Va. 2010) (concluding that specific jurisdiction requires a claim-specific analysis). The plaintiff has offered more than mere speculation or "bare allegations" regarding the defendant's contacts with the forum state.[2] Rich, 121 F.R.D. at 259. Because the plaintiff's assertion of personal jurisdiction is not plainly frivolous, and since additional evidence would facilitate a more informed decision, the court will permit the parties to conduct jurisdictional discovery. Such discovery shall be limited to the theories of specific jurisdiction relied upon in the plaintiff's brief in opposition (Docket No. 31), and must be completed within sixty (60) days. The pending motion to dismiss for lack of personal jurisdiction will be denied without prejudice to refiling within fourteen (14) days

---

[2] In his reply brief, the defendant argues that he does not have sufficient contacts with the Western District of Virginia to support the exercise of personal jurisdiction. This argument reflects a misunderstanding of the law. "[T]he Supreme Court has recognized that a district court may exercise specific personal jurisdiction over a defendant . . . if the defendant has sufficient 'minimum contacts' with the forum state." CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 293 (4th Cir. 2009) (emphasis added) (citing Int'l Shoe, 326 U.S. at 316). Accordingly, the jurisdictional analysis focuses on "a party's contacts with the entire state" rather than its "contacts with the particular federal district within such state." Global Touch Solutions, LLC v. Toshiba Corp., 109 F. Supp. 3d 882, 891 (E.D. Va. 2015); see also Taylor v. Ishida, No. 3:02-CV-0402, 2002 U.S. Dist. LEXIS 9916, at *18 n.7 (N.D. Tex. June 3, 2002) (emphasizing that the "[m]inimum contacts analysis is conducted according to contacts with the forum state, not the forum district court") (emphasis in original).

following the completion of this limited discovery. If the defendant chooses to renew his jurisdictional motion, the parties shall file supplemental briefs addressing whether the plaintiff can establish specific jurisdiction for each claim asserted in the complaint.

**II.   Venue**

In addition to seeking dismissal for lack of personal jurisdiction, the defendant argues that the case should be dismissed on the basis of improper venue. See Fed. R. Civ. P. 12(b)(3) (authorizing dismissal for improper venue). For the following reasons, the court disagrees.

The defendant's venue argument is based on 28 U.S.C. § 1400(b) and the Supreme Court's recent decision in TC Heartland v. Kraft Food Group Brands LLC, 137 S. Ct. 1514 (2017). Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). In TC Heartland, the Supreme Court held that the term "residence" in § 1400(b), "[a]s applied to domestic corporations, . . . refers only to the State of incorporation," and does not incorporate the broader definition contained in the general venue statute, 28 U.S.C. § 1391(c). TC Heartland, 137 S. Ct. at 1517, 1521 (emphasis added).

Even though the defendant in this case is not a domestic corporation, he nonetheless argues that venue is improper in light of TC Heartland. However, the TC Heartland Court made clear that its opinion did not address the applicability of § 1400(b) to foreign defendants. See id. at 1520 n.2. The Court also explicitly noted that it did not "express any opinion on [the] Court's holding in Brunette Machine Works, Ltd. v. Kockum Industries, Inc., 406 U.S. 706 (1972)." Id. Accordingly, "Brunette remains good law." 3G Licensing, S.A. v. HTC Corp., No. 1:17-cv-00083, 2017 U.S. Dist. LEXIS 207202, at *4 (D. Del. Dec. 18, 2017) (citing Red.com, Inc. v.

Jinni Tech Ltd., No. 8:17-cv-00382, 2017 U.S. Dist. LEXIS 177799, at *20 (C.D. Cal. Oct. 11, 2017)).

In Brunette, the Supreme Court held that when a foreign defendant is the subject of a patent infringement action, venue is governed by the general venue provision, rather than by § 1400(b). Brunette, 406 U.S. at 714. The general venue provision states that "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3) (emphasis added); see also In re Princeton Digital Image Corp., 496 F. App'x 73, 75 (Fed. Cir. 2012) (noting that the Brunette Court "reaffirmed the long-standing rule that a patent infringement suit could be brought against a foreign defendant in any district court, and was not restricted to where the defendant resides, commits acts of infringement, or has a regular and established business as otherwise required under the patent venue statute").

In this case, it is undisputed that Dabes is a foreign defendant. See Def.'s Mot. to Dismiss or Transfer 10 (emphasizing that the defendant does not reside in the United States). Accordingly, venue is not improper, and the defendant is not entitled to dismissal under Rule 12(b)(3).

### III. Transfer

Dabes alternatively seeks to transfer the case to the Central District of California, pursuant to 28 U.S.C. § 1404(a). This statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). As the party seeking transfer, Dabes bears the "heavy burden" of establishing that transfer is warranted. Encompass Advisors, Ltd. v. Unapen, Inc., 686 F. Supp. 2d 607, 616 (W.D.N.C. 2009).

Based on the current record, the court is not persuaded that transferring the case to the Central District of California would be more convenient for the parties and witnesses. Nonetheless, until the question of personal jurisdiction is resolved, the court tends to believe that it would be premature to rule on the defendant's alternative transfer request. See, e.g., Powerteq, LLC v. Ashraf, No. 3:15-cv-02626, 2016 U.S. Dist. LEXIS 1896, at *9 (N.D. Cal. Jan. 7, 2016) (declining to consider the defendant's alternative motion to transfer under § 1404(a) until the court resolved the issue of personal jurisdiction); Devicor Med. Prods. v. Biopsy Scis., LLC, No. 1:10-cv-01060, 2013 U.S. Dist. LEXIS 16537, at *21 (D. Del. Feb. 7, 2013) (same). Accordingly, to the extent the pending motion seeks to transfer the case pursuant to § 1404(a), the motion will be denied without prejudice.

## Conclusion

For the reasons set forth above, the defendant's motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer the case to the Central District of California, will be denied in part and denied without prejudice in part. Following the completion of the limited jurisdictional discovery outlined above, the defendant shall have fourteen (14) days in which to renew the jurisdictional challenge under Rule 12(b)(2) and the alternative request to transfer the case under § 1404(a).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 5th day of March, 2018.

_____
Senior United States District Judge